UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRADILLAS COURT REPORTERS, INC., <br> Plaintiff, <br> v. <br> CHERRY BEKAERT, LLP, et al., <br> Defendants. | Case No. 18-mc-80064-KAW <br><br> **ORDER REGARDING PLAINTIFF'S MOTION TO COMPEL** <br> Re: Dkt. No. 1 |

Plaintiff Gradillas Court Reporters, Inc. filed a lawsuit against Defendants Cherry Bekaert, LLP and Sara Crabtree, alleging that it lost a bid for a government contract due to Defendants' failure to timely file Plaintiff's bid. (Plf.'s Mot. to Compel at 5, Dkt. No. 1.) On March 28, 2018, Plaintiff brought the instant motion to compel production of documents from third-party Behmke Reporting and Video Services, Inc. ("Behmke"), the company that won the government contract that Plaintiff tried to bid on. Plaintiff's motion to compel is set for hearing on May 3, 2018.

Presently, the Court is inclined to grant Plaintiff's motion to compel as to Document Production Topics No. 1 ("Behmke's Bid, including any and all attachments, cover documents, and accompanying communications") and 5 ("Documents demonstrating Behmke's status as a woman-owned business"). The Court finds that Plaintiff has a substantial need for these documents because it has the burden of proving causation and damages on its lost profits claim by showing that its bid would likely have been accepted over the Behmke bid if Defendants had timely submitted the bid.

The Court does not find Behmke's arguments to the contrary to be persuasive. First, Behmke does not explain why any expert opinion would be "inherently speculative -- and, therefore, ultimately inadmissible." (Behmke Opp'n at 10, Dkt. No. 6.) Second, although Behmke

argues that "the subpoena assumes that the contract that is the subject of the Complaint is operative," there is no language in the subpoena that suggests the contract must be operative. (*Id.*) Finally, while Behmke argues Plaintiff can use other evidence to prove that it would have won the SEC contract over Behmke, Behmke does not explain what such evidence would be. (*Id.* at 11.) To the extent Behmke suggests Plaintiff can use other evidence to prove its lost profits, Plaintiff would still need to prove causation, *i.e.*, that Plaintiff would have won the contract over Behmke if Defendants had timely submitted its bid. (*See id.*)

In light of the Court's tentative opinion, the Court requires that the parties be prepared to address the following issues at the May 3, 2018 hearing:

(1) How are the remaining Document Production Topics relevant to determining whether Plaintiff's bid would have been chosen over Behmke's bid or Plaintiff's damages? For example, why would communications between the SEC and Behmke be determinative of why Behmke was chosen, especially if those communications were made after the contract was awarded? Similarly, why would all of Behmke's bids since 2012 be necessary to determining the award of the contract at issue in this case?

(2) Besides pricing information, what other confidential or trade secret information is Behmke claiming to be in the bid and other requested documents? If Behmke is claiming the *entire* bid and all documents sought are confidential or trade secrets, Behmke must be prepared to provide relevant legal authority. *Compare with McDonnell Douglas Corp. v. Nat'l Aeronautics & Space Admin.*, 180 F.3d 303, 304 (D.C. Cir. 1999) (objecting to the release of **certain** information in the contract, including launch service prices, cost figures for components and overhead, labor rates, and profit figures and margins).

Finally, given that the Court is currently inclined to grant the motion to compel with respect to certain documents sought, the Court ORDERS the parties to meet and confer regarding a protective order to govern any production. The Court refers the parties to the Northern District of California's model protective orders, including its "Stipulated Protective Order for Standard Litigation" and "Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets," both of which can be found at

https://www.cand.uscourts.gov/model-protective-orders. The parties should consider how an order could be tailored to address Behmke's concerns; for example, permitting only outside counsel to review the designated confidential information, or creating a process for sealing exhibits for use at trial. *See United States v. Anthem, Inc.*, Case No. 1:16-cv-1493(ABJ), 2016 U.S. Dist. LEXIS 190360, at *12-14 (D.D.C. Nov. 4, 2016) (describing process for how to have trial exhibits sealed for trial); *United States v. AB Electrolux*, Case No. 1:15-cv-1039-EGS, Dkt. No. 157 ("Order Governing Procedures for Use of Confidential Information at Trial") (D.D.C. Oct. 13, 2015).

In requiring the parties to meet and confer, the Court notes that it does not find persuasive Behmke's argument that the protective order is ineffective because it could be violated. (Behmke Opp'n at 14-15.) The Court will not presume that attorneys will knowingly violate a protective order, opening themselves to sanctions and contempt of the court. Moreover, it is a reality of litigation that confidential information may be used at a trial; the purpose of the protective order is to eliminate the risk of that confidential information being made public.

IT IS SO ORDERED.

Dated: April 30, 2018

_____
KANDIS A. WESTMORE
United States Magistrate Judge