UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRADILLAS COURT REPORTERS, INC., <br> Plaintiff, <br> v. <br> CHERRY BEKAERT, LLP, et al., <br> Defendants. | Case No. 18-mc-80064-KAW <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RECONSIDERATION** <br><br> Re: Dkt. No. 29 |

Plaintiff Gradillas Court Reporters, Inc. filed a lawsuit against Defendants Cherry Bekaert, LLP and Sara Crabtree, alleging that it lost a bid for a contract with the Securities and Exchange Commission ("SEC") due to Defendants' failure to timely file Plaintiff's bid. (Plf.'s Mot. to Compel at 5, Dkt. No. 1.) On March 28, 2018, Plaintiff brought a motion to compel production of documents from third-party Behmke Reporting and Video Services, Inc. ("Behmke"), the company that won the bid for the SEC contract that Plaintiff sought to bid on. On May 14, 2018, the Court granted in part and denied part Plaintiff's motion to compel, requiring that Behmke provide certain documents, including its bid for the SEC contract. (Ord. at 13, Dkt. No. 20.)

On May 21, 2018, the SEC cancelled the contract that had been awarded to Behmke. (Behmke Mot. for Reconsideration at 2, Dkt. No. 29.) The Court permitted Behmke to file a motion for reconsideration based on these changed circumstances. (Dkt. No. 28.) The Court deems the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b), and VACATES the August 16, 2018 hearing. Upon consideration of the parties' filings, the Court GRANTS IN PART AND DENIES IN PART Behmke's motion for reconsideration.

## I. BACKGROUND

Plaintiff is a woman-owned court reporting service. (Plf.'s Mot. to Compel at 5.)

Defendants have acted as Plaintiff's professional government contracts experts and consultants since 2013, and as Plaintiff's contract manager on government contracts since 2015. (*Id.*) In February 2017, Plaintiff retained Defendants to prepare and submit a bid for a contract with the SEC. (*Id.*) Defendants, however, untimely submitted the bid, causing it to be automatically rejected. (*Id.*)

On January 18, 2018, Behmke was awarded the SEC contract. (Plf.'s Mot. to Compel at 5.) A third-party company, Free State Reporting, Inc. ("Free State"), filed two protests of the award to Behmke. (*Id.* at 5-6; *see also* Behmke Decl. ¶ 6, Dkt. No. 47.) The protests were primarily directed at the SEC's process, not Behmke's bid. (Behmke Decl. ¶ 6.) Due to the protests, Behmke never performed any work under the SEC contract. (Behmke Decl. ¶ 5.) Instead, Behmke's work for the SEC was pursuant to a prior contract and a bridge contract, neither of which were related to the SEC contract at issue in this litigation. (Behmke Decl. ¶ 5.)

Plaintiff then filed suit against Defendants, bringing causes of action for breach of contract and professional malpractice. (Plf.'s Mot. to Compel at 6.) To prove liability, *i.e.* that Plaintiff would have been awarded the SEC contract if its bid had been timely submitted, Plaintiff hired a government contract specialist who stated: "To give [an] expert report on the likelihood that [Plaintiff's] bid would have been accepted over the bid submitted by Behmke if Defendants . . . had properly prepared and submitted the bid, the most straightforward method is to compare [Plaintiff's] and Behmke['s] bid documents and apply the factors that the SEC uses to make such awards." (Wilson Decl. ¶ 5, Dkt. No. 3.)

Plaintiff sought certain documents from Behmke, including Behmke's bid. (Smith Decl., Exh. E, Dkt. No. 4.) Behmke objected to the subpoena, asserting that the requested documents contain trade secret and proprietary information. (Dkt. No. 6 at 5.) Plaintiff then filed a motion to compel. On May 14, 2018, the Court granted in part Plaintiff's motion to compel, requiring Behmke to produce the following categories of information:

> 1. Behmke's Bid, including any and all attachments, cover documents, and accompanying communications.
>
> 5. Documents demonstrating Behmke's status as a woman-owned business.

> 6. Documents for any and all Awards that Behmke competed for or been awarded by the SEC since 2012, including but not limited to the following: documents soliciting bids for the Award, documents indicating the date of the Award, documents listing the services to be provided under the Award, documents showing the monetary value of the Award, . . . , documents showing that the Award was awarded to Behmke (or others), and documents or communications indicating whether or not Behmke successfully carried out the services under the Award.

(Order at 2-3, 13.)

On May 25, 2018, Behmke moved for leave to file a motion for reconsideration. (Dkt. No. 21.) Behmke asserted that there were new material facts since the Court's order, namely that on May 21, 2018, the SEC had cancelled its solicitation for the contract at issue in this litigation. (*Id.* at 2; Behmke Decl. ¶ 2.) This resulted in all of the bids being thrown out, although it is Behmke's understanding that the SEC will issue a replacement solicitation. (Dkt. No. 21 at 2; Behmke Decl. ¶ 4.) On May 30, 2018, the Court granted Behmke's motion for leave to file its motion for reconsideration. (Dkt. No. 28.)

On June 6, 2018, Behmke filed the instant motion for reconsideration, as to the Court requiring production of Category Nos. 1 and 6.[1] (Behmke Mot. for Reconsideration at 2.) On June 21, 2018, Plaintiff filed its opposition. (Plf.'s Opp'n, Dkt. No. 41.) On July 3, 2018, Behmke filed its reply. (Behmke Reply, Dkt. No. 45.)

## II. LEGAL STANDARD

District courts possess the "inherent procedural power to reconsider, rescind, or modify an interlocutory order" before entry of final judgment. *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001); *see also* Fed. R. Civ. P. 54(b) (stating that any order or decision which does not end the action "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). Reconsideration is appropriate where: (1) a material difference in fact or law exists from that which was presented to the court before entry of the interlocutory order for which reconsideration is sought; (2) the emergence of new material facts or a change of law after the time of the order; or (3) a manifest

---

[1] Behmke states that the dispute concerning Category No. 5 is moot because it has produced responsive documents. (Behmke Mot. for Reconsideration at 2 n.1.)

1 failure by the Court to consider material facts or dispositive legal arguments which were presented
2 to the Court before the interlocutory order. (Civil L.R. 7-9(b).)

### III. DISCUSSION

#### A. Proper Motion for Reconsideration

As an initial matter, Plaintiff argues that Behmke's motion does not meet the standard for reconsideration because Behmke previously raised the possibility that the SEC contract could be cancelled during oral arguments. (Plf.'s Opp'n at 8, 11.) The Court disagrees. The possibility of the SEC contract being cancelled is a distinct circumstance from the SEC contract actually being cancelled. Indeed, Plaintiff strenuously argued that it was "highly speculative" that the SEC would cancel the contract. (*See* Glaspy Decl., Exh. A (May 3, 2018 Transcript) at 10:12-12-13 ("the SEC which has told us that there's no rebid being contemplated"); 10:16-17 ("We have information from the SEC that they have not made any decision and do not think they will rebid"); 11:23-25 ("If the contract, the bid contract were to rebid, and that is highly speculative, and the SEC has told us that there's nothing in the works to rebid it"); 13:6-7 ("We don't think the SEC is going to do anything different than what it's told us, which is not rebid"); 13:12-13 ("there has been . . . nothing from the SEC that this contract is going to be rebid"); 13:16-19 ("our experts say only in the most draconian of circumstances would the SEC rebid because it's very expensive to go through the bidding. They want to go forward with Behmke.").) The Court also decided Plaintiff's motion to compel based on the fact that "[t]he SEC contract itself has not been cancelled." (Order at 2.) The actual cancellation of the SEC contract is, as discussed below, a material difference in fact that affects the Court's determination of whether there is substantial need under Federal Rule of Civil Procedure 45(d)(3)(B).

#### B. Balancing of Need for Trade Secret Against Injury (Category No. 1)

Rule 45(d)(3)(B) permits a court to quash or modify a subpoena if the subpoena requires the disclosure of "a trade secret or other confidential . . . information . . . ." Fed. R. Civ. P. 45(d)(3)(B)(i). As an alternative to quashing or modifying the subpoena, the court may order production under specified conditions if the party seeking production "(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures

4

that the subpoenaed person will be reasonably compensated." Fed. R. Civ. P. 45(d)(3)(C). In determining whether there is a substantial need, "the district court's role in this inquiry is to balance the need for the trade secrets against the claim of injury resulting from disclosure." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 685 (N.D. Cal. 2006). Moreover, this "determination of substantial need is particularly important in the context of enforcing a subpoena when discovery of trade secret or confidential commercial information is sought from non-parties." *Id.*

### i. Need for Trade Secret

The Court finds that the cancellation of the SEC contract significantly reduces the need for Behmke's trade secrets, specifically its bid. In the order granting in part the motion to compel, the Court found that there was a substantial need for the bid information because it was "necessary to determine liability, *i.e.*, whether Plaintiff would have been awarded the bid over Behmke." (Order at 6.) The cancellation of the SEC contract affects Plaintiff's need for the bid information in two ways.

First, the cancellation of the SEC contract requires Plaintiff to not prove that it would have been awarded the SEC contract over Behmke, but that the SEC contract would not have been cancelled if Plaintiff had won the SEC contract. Plaintiff has failed to make an adequate showing of the latter. Plaintiff submits a declaration by its expert, Ms. Andrea Wilson, which opines that "the fact that Behmke's award was protested by another bidder does not mean that Gradillas'[s] award would have been. Again, the Behmke documents are relevant and should shed light on this issue." (Supp. Wilson Decl. ¶ 9, Dkt. No. 44-5.) Ms. Wilson, however, does not state that she reviewed Free State's protests,[2] as she only states that she reviewed the SEC's notice of cancellation. (Supp. Wilson Decl. ¶¶ 6-7.) Thus, her opinion that Free State would not have protested an award to Plaintiff is highly speculative.[3] In contrast, Behmke submits a declaration

---

[2] There would be no substantial need for Behmke's bid to demonstrate that Free State would not have challenged an award of the SEC contract to Plaintiff because a review of Free State's protests would be probative as to whether Free State's protests were based on facts specific to Behmke, or to the SEC process itself.

[3] Plaintiff argues that the Court previously rejected Behmke's argument that Ms. Wilson's opinion was speculative. (Plf.'s Opp'n at 14.) There, however, the Court found that Behmke had failed to give any reasons for why Ms. Wilson's expert opinion would be inherently speculative, as Behmke

5

by its founder and owner, Paula S. Behmke; Ms. Behmke states that she did review the redacted Free State protests, and that it was her "understanding [that] the protests had nothing to do with Behmke's bid; they were directed at the SEC's process." (Behmke Decl. ¶ 6.) Thus, even if Plaintiff had been awarded the SEC contract, Free State would still have a basis to challenge the award based on the SEC's process. Based on the record in this case, the Court concludes that there is no showing that Free State would not have protested an award of the SEC contract to Plaintiff, and that the SEC contract would not have been cancelled regardless of who was awarded the contract.[4] Absent such a showing, the need for Behmke's bid information is significantly reduced.

Second, the protests and cancellation of the SEC contract appears to have eliminated Plaintiff's damages. In its opposition, Plaintiff explains that there are past and future damages: "[t]he past damages are those profits which would have been realized to date[, and t]he future lost profits depend on how much time a successful award to [Plaintiff], not Behmke, reasonably would have extended." (Plf.'s Opp'n at 14.) With respect to past damages, the evidence in the record suggests there are none. Plaintiff's expert, Ms. Wilson, states that the damages would be "based on the amount of work which Behmke has done for the SEC in the last year which would have been covered by the scope of the solicitation." (Supp. Wilson Decl. ¶ 10.) Ms. Behmke, however, states that Behmke did not perform any work for the SEC under the now cancelled SEC contract; instead, "[t]he only work that Behmke has performed for the SEC is unrelated to the cancelled solicitation." (Behmke Decl. ¶ 5.) As to future damages, Plaintiff fails to explain how there could be future damages in light of the cancellation of the SEC contract. Given that the SEC contract has now been cancelled, there is no basis to presume that an award to Plaintiff would have been extended. This is particularly the case where, as discussed above, Plaintiff has made no showing

---

did not "suggest that Ms. Wilson is unqualified or that her methodology is problematic or that expert opinions are not typically used in such cases." (Order at 7.) That is distinguishable from the instant motion, where Ms. Wilson's actual opinion lacks any apparent foundation.

[4] To be clear, this is not a situation in which there is competing evidence requiring a merits-based determination by the Court. Rather, Plaintiff has made *no* showing that Free State would not have protested an award of the SEC contract to Plaintiff beyond a statement by its expert, which was not based on the review of the protests. A statement with no apparent basis and the arguments of counsel are not sufficient to show that Plaintiff could ever establish that Free State would not have protested an award of the SEC contract to Plaintiff.

that Free State would not have protested the award of the SEC contract to Plaintiff.

Thus, the Court finds that the cancellation of the SEC contract significantly reduces Plaintiff's need for Behmke's bid information. Because the evidence in the record shows only that Free State would have challenged the SEC contract whether it was awarded to Behmke or Plaintiff, thus leading to the cancellation of the SEC contract solicitation, it is unlikely that Plaintiff will be able to show liability even with Behmke's bid information.

### ii. Injury to Behmke

The Court also finds that the potential injury to Behmke from disclosing its trade secrets is significantly greater now that the SEC contract has been cancelled. Plaintiff argues that the Court rejected Behmke's previous arguments that the cancellation of the SEC contract could lead to increased harm if Plaintiff and Behmke were to then compete against each other for the replacement contract. (Plf.'s Opp'n at 16.) As Behmke explains, however, "[b]efore the SEC cancelled the solicitation, it was only a possibility that Behmke would be in direct competition with [Plaintiff] for a future contract[;] now it is inevitable that they will compete head-to-head for the SEC replacement contract . . . ." (Behmke Mot. for Reconsideration at 5.) In other words, when the Court issued its prior order, the cancellation of the SEC contract was hypothetical. That is no longer the case. While the Court does not presume that Plaintiff's counsel would violate any nondisclosure order, the Court also cannot ignore that the potential injury to Behmke in the event of a disclosure is significantly higher than before because Plaintiff would have Behmke's bid information while competing directly with Behmke for the contract that Behmke previously won.[5] *See Everco Indus., Inc. v. O. E. M. Prods. Co.*, 362 F. Supp. 204, 206 (N.D. Ill.) ("it is important to remember that the Plaintiff and Defendant are competitors. By the very nature of the parties['] business relationships, there are certain documents which are confidential and should not be discovered without sufficient cause.").

### iii. Balancing

For the reasons stated above, weighing Plaintiff's need for Behmke's bid information

---

[5] During oral arguments, Plaintiff made clear that if there was a rebid, it "would certainly put [its] name in the hat." (May 3, 2018 Transcript at 10:19.)

7

1 against Behmke's potential injury from disclosure, the Court concludes that Plaintiff has not
2 demonstrated a substantial need for Behmke's bid information. This is particularly the case where
3 Behmke is a third-party to the suit. *See Gonzales*, 234 F.R.D. at 685 ("The determination of
4 substantial need is particularly important in the context of enforcing a subpoena when discovery of
5 trade secret or confidential commercial information is sought from non-parties."). Therefore, the
6 Court GRANTS Behmke's motion for reconsideration as to the bid information, and DENIES
7 Plaintiff's motion to compel the bid information.

### C. Category No. 6

The Court, however, finds that this analysis applies only as to Behmke's bid information,. The cancellation of the SEC contract does not affect the Court's prior ruling regarding Category No. 6, in which the Court required that Behmke provide responsive documents because Behmke had failed to explain why the responsive documents would involve trade secrets. (Order at 5-6.) The Court specifically did *not* compel production of "documents submitted by Behmke to the SEC for the purpose of obtaining the Award including pricing information and labor category level." (*Id.* at 6.) Behmke's analysis in the motion for reconsideration concerns only the effect of the cancellation of the SEC contract on the need for the bid information; Behmke does not address the Court's finding that the responsive documents to Category No. 6 to be compelled did not include trade secrets. Thus, because Category No. 6 does not require the same balancing test under Rule 45, and because Behmke does not otherwise argue that the information is not relevant, Plaintiff need only demonstrate that the information sought is relevant. As the responsive information goes to past performance of government work, which affects Behmke's eligibility for the SEC contract, such information is relevant and therefore discoverable. (*See* Order at 5-6; Wilson Decl. ¶ 5.) The Court therefore DENIES Behmke's motion for reconsideration as to documents responsive to Category No. 6, as consistent with the Court's May 14, 2018 order.

///

///

///

///

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Behmke's motion for reconsideration as to Category No. 1, or Behmke's bid information, and DENIES Plaintiff's motion to compel this production. The Court DENIES Behmke's motion for reconsideration as to Category No. 6.

IT IS SO ORDERED.

Dated: July 20, 2018

KANDIS A. WESTMORE
United States Magistrate Judge